## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CONSOLIDATED ENVIRONMENTAL MANAGEMENT, INC.<br>     Plaintiff, | CIVIL ACTION NO.:_____ |
| v. | JUDGE _____ |
| ZEN-NOH GRAIN CORPORATION<br>     Defendant. | MAGISTRATE JUDGE_____ |

## COMPLAINT

Plaintiff, Consolidated Environmental Management, Inc., files this complaint against Defendant, Zen-Noh Grain Corporation ("Zen-Noh"), and shows the Court as follows:

## PARTIES

1.  Plaintiff, Consolidated Environmental Management, Inc., ("Consolidated-Nucor") is a Delaware corporation that together with other affiliates of Nucor Corporation, is constructing a direct reduced iron ("DRI") facility in St. James Parish, on property adjacent to Zen-Noh's St. James Parish grain elevator.  Hereinafter, the entities will be referred to collectively as "Consolidated-Nucor."

2.  Consolidated-Nucor entities meets the definition of "person" under the federal Administrative Procedure Act ("APA"), 5 U.S.C. § 551(2), and the Louisiana Administrative Procedure Act ("the Louisiana APA"). La. Rev. Stat. Ann §. 49:951(5).

3.  The Consolidated-Nucor entities have the duty to provide their employees with a safe work environment. The failure of Zen-Noh to adequately control the particulate emissions

from its loading and unloading operations results in significant dusting. This dusting from ship and/or barge loading and other operations at Zen-Noh is posing a nuisance, if not more serious health threats from grain dust. Zen-Noh's actions have the potential to negatively impact these employees' health and productivity, which impacts the operations at the Consolidated-Nucor facility. As such, Zen-Noh's actions and the violations alleged in this Complaint injure both Consolidated-Nucor and its employees. These injuries are actual, concrete and irreparable. They cannot be redressed by monetary damages. The requested relief will redress these injuries.

4.      Zen-Noh is a corporation, incorporated and existing under the laws of Louisiana, with its principal place of business located in St. James Parish. Zen-Noh operates a grain elevator, docks,  and associated equipment that together constitute a major stationary source of regulated air pollutants (the "Elevator") in St. James Parish, at 8886 Highway 44, Convent, Louisiana 70723, on property adjacent to the Nucor Steel Louisiana facility.

5.      Pursuant to Local Court rule LR 3.1, notice is given that this lawsuit is related to a lawsuit pending in this Court in Section R, styled as Zen-Noh Grain Corporation v. Consolidated Environmental Management, Inc., ET AL., Civil Action No. 12-1011, Section R. The instant case and Civil Action No. 12-1011 both involve Zen-Noh Grain Corporation and Consolidated Environmental Management, Inc. and both suits involve allegations that the respective constructor/operator should be enjoined from constructing or operating their facilities without a Prevention of Significant Deterioration ("PSD") permit from the Louisiana Department of Environmental Quality ("LDEQ").  This matter therefore involves parts of the same subject matter (Clean Air Act Compliance), same operative facts (duties to obtain permits as a condition of operations) and same legal issues (balancing of factors related to claims for equitable relief).

## JURISDICTION AND VENUE

6.      This suit arises under the Clean Air Act ("CAA"), 42 U.S.C. §7401, *et seq*., including

    A.      the Louisiana State Implementation Plan ("SIP"), 40  C.F.R. Part 52, Subpart T, including the PSD provisions of the SIP at La. Admin. Code § 33:III.509, which SIP has been approved by the Environmental Protection Agency ("EPA") pursuant to 42 U.S.C. § 7410 to implement the CAA's National Ambient Air Quality Standards and New Source Review programs;

    B.      the operating permit requirements of title V of the CAA, 42 U.S.C. § 7661, *et seq.* as implemented through the Louisiana Department of Environmental Quality's ("LDEQ") regulations implementing CAA title V, including without limitation, La. Admin. Code §§ 33:III.Chapter 5 (collectively, with 40 C.F.R. Part 70, referred to herein as "Part 70").

The Louisiana Part 70 program was approved by the Environmental Protection Agency under title V of the CAA at 60 Fed.Reg. 47296, September 12, 1995. *See also* 40 C.F.R. Part 70, Appendix A.

7.      Consolidated-Nucor also bring suit under the citizen suit provision of the Louisiana Environmental Quality Act.    La. Rev. Stat. Ann. § 30:2001 *et seq*. The Louisiana Environmental Quality Act authorizes "any person having an interest, which is or may be adversely affected, [to] commence a civil action on his own behalf against any person whom he alleges to be in violation of this Subtitle or of the regulations promulgated hereunder." La. Rev. Stat. Ann. § 30:2026A(1).

8.      In this suit, Consolidated-Nucor seeks to restrain and enjoin Zen-Noh from operating a major source without first obtaining the proper Part 70 and PSD permits and to require Zen-Noh

3

to comply with applicable provisions of the Louisiana SIP, the Part 70 rules, and/or the terms and conditions of its permit that has been issued pursuant to the Louisiana SIP. Consolidated-Nucor's claims against Zen-Noh are authorized by the citizen suit provision of the CAA, specifically 42 U.S.C. § 7604(a)(3) and the citizen suit provision of the LEQA, specifically La. Rev. Stat. Ann. § 30:2026. This Court has jurisdiction over Consolidated-Nucor's claims pursuant to 42 U.S.C. § 7604 and 28 U.S.C. § 1331.This Court has pendent jurisdiction over Consolidate-Nucor's claims under the LEQA pursuant to 28 U.S.C. § 1337.

9.     The Elevator is located in St. James Parish, Louisiana, and emissions of air pollutant from the Facility will impact the air quality in St. James Parish, including at the Nucor Steel Louisiana facility. Venue is proper in the Eastern District of Louisiana pursuant to 28 U.S.C. § 1391(b)(1) and (2) and 42 U.S.C. § 7604(c)(1).

10.     Section 304 of the Clean Air CAA, 42 U.S.C. § 7604(b)(1)(A), and the Louisiana Environmental Quality Act, La Rev. Stat. Ann. § 30:3026A(1), require a plaintiff to provide 60 days prior notice of intent to file a citizen suit for a violation of an air standard to the Administrator of EPA, the State, and the alleged violator of the standard. Consolidated-Nucor provided such notice of intent to sue on April 30, 2012.[1] The CAA does not require prior notice for actions under 42 U.S.C. § 7604(a)(3) which assert that a respondent is operating without an appropriate PSD permit.42 U.S.C. § 7604(b).

11.     A copy of this Complaint for Injunctive Relief and Civil Penalties has been served on the Attorney General of the United States and the Administrator of EPA, pursuant to 42 U.S.C. § 7604(c) and Fed. R. Civ. P. 4(i).

---

[1]*See* April 30, 2012 Notice of Intent to Sue, attached hereto as Exhibit A.

## STATUTORY BACKGROUND

12.     State implementation plans, which are promulgated under Section 110 of the CAA, are state plans for assuring compliance with the National Ambient Air Quality Standards ("NAAQS"), and with the provisions of the CAA designed to Prevent Significant Deterioration of air quality in areas already meeting the NAAQS. *See* 42 U.S.C. § 7410(a). Louisiana's SIP is found at 40 C.F.R. Part 52, Subpart T.  The SIP includes regulations for issuance of air permits for both minor and major stationary sources as well as regulations establishing emissions standards and work practice standards.

13.     Section 161 of the CAA, 42 U.S.C. § 7471, requires that each applicable SIP contain a prevention of significant deterioration ("PSD") program. Louisiana's PSD program has been federally approved. 52 Fed. Reg. 13,671 (Apr. 24, 1987). *See also* 40 C.F.R. § 52.970(c). Revisions to this program were approved in 1987, 1996, and 2011. *See* 40 C.F.R. § 52.970(c). *See also* 61 Fed. Reg. 53,639 (Oct. 15, 1996) and 76 Fed. Reg. 42,549 (July 19, 2011). Louisiana's PSD procedures are codified at La. Admin. Code tit. 33, part III, §509.

14.     Title V of the CAA, 42 U.S.C. §§ 7661-7661f, establishes a permitting program for certain sources, including "major sources." Louisiana's Title V operating permit program was granted full approval by EPA on September 12, 1995.  *See* 60 Fed. Reg. 47,296. Louisiana's Title V operating permit program primarily consists of La. Admin. Code tit. 33, part III, Chapter 5.

## FACTS

15.     Zen-Noh operates a grain elevator and a wood chip storage and reclamation facility in St. James Parish, at 8886 Highway 44, Convent, Louisiana 70723, on property adjacent to the Nucor Steel Louisiana facility.

16.    Under the state and federal Part 70/Title V programs, a "Part 70 source" is defined to include any "major source." *See* La. Admin. Code tit. 33, § 502.A; 40 C.F.R. § 70.2.

17.    The definition of  "major source" under LAC 33:III.502.b., part of the federally approved Louisiana Part 70 program, includes: "any stationary source that directly emits or has the potential to emit 100 tpy [tons per year] or more of any regulated air pollutant….Fugitive emissions of a stationary source shall be considered in determining whether it is a major source under this Subparagraph: i. [for certain specific categories which do not include Zen-Noh], and ii. for all other stationary source categories, which as of August 7, 1980, are being regulated by a standard promulgated under Section 111or 112 of the Clean Air Act."

18.    Total particulate (also referred to as total suspended particulate or "TSP") is defined as a regulated air pollutant per La. Admin. Code tit. 33, § III.502.  Under La. Admin. Code tit. 33, part III, § 502, if the potential to emit a regulated air pollutant is greater than 100 tons per year, the source is a Part 70 source and must obtain a Part 70/Title V permit.

19.    Zen-Noh is required to include its fugitive TSP emissions towards determining this major source threshold because, as of August 7, 1980, the Elevator was regulated by 40 C.F.R. Part 60, Subpart DD, the New Source Performance Standard for Grain Elevators that was adopted pursuant to Section 111 of the CAA,  42. U.S.C. §7411, and adopted by reference into the Louisiana SIP by LDEQ.  See LAC 33:III.3003.  The Elevator was initially built in 1979 after such NSPS standard became applicable in 1978.

20.    In its certified application for a minor source permit modification submitted to LDEQ in December 2001, Zen-Noh certified that the Elevator's TSP emissions were greater than 153 tons per year.

21.     The Elevator meets the definition of major stationary source under La. Admin. Code tit. 33, part III., § 502 – it has a potential to emit TSP emissions of 153 tons per year (greater than the major source threshold of 100 tons per year), including fugitive emissions.

22.     Because the Elevator has a potential to emit TSP emissions of 153 tons per year, Zen-Noh is required to have obtained a Part 70 operating permit pursuant to La. Admin. Code tit. 33, part III, §507. (Zen-Noh may also have a potential to emit Volatile Organic Compound ("VOC") emissions in excess of 100 tons per year ("tpy"), and VOCs are also "regulated pollutants.") Absent such an operating permit, Zen-Noh does not have authority to continue operations under the CAA. *Id.  See also* 40 C.F.R. § 70.1(b); La. Admin. Code tit. 33, part III, § 507.B.2.

23.     Zen-Noh does not have a Part 70 operating permit and does not have authority to continue its operations until it obtains a Part 70 permit. *Id.*

## THE EXISTING ZEN-NOH AIR PERMIT

Use of Tarpaulins or Closed Covers

24.     Zen-Noh originally obtained a state air permit in 1979.  The permit possessed by Zen-Noh incorrectly characterizes the Elevator as a minor source. The LDEQ modified that permit in 1995, 1998, 2000 and 2002. Pursuant to the Louisiana SIP, LDEQ last modified the Zen-Noh air permit, through issuing permit number 2560-00005-05 (the "Air Permit") on March 20, 2002.

25.     Specific Condition No. 2 of Zen-Noh's Air Permit requires it to use tarpaulins when loading ships at the Elevator, except during topping off operations. Specific conditions states in its entirety: "[t]arpaulins shall be used during all ship loading operations, except during

topping off procedures. Closing covers on ships can be used in place of tarping when possible."

26.     This permit condition was adopted pursuant to Louisiana SIP provisions La. Admin. Code tit. 33, part III, §§ 905.A., 1305, and 1311.

27.     Upon information and belief, Zen-Noh has loaded ships without use of tarpaulins or closed covers, even when not topping off.

28.     Specific incidents of such failure occurred on at least the following dates: October 28, 2010, April 16, 2011, June 6, 2011, June 25, 2011, August 11, 2011, and November 16, 2011.

29.     Based on the observations, Consolidated-Nucor believes and alleges upon information and belief, that Zen-Noh committed, and continues to commit on an on-going basis, other violations whenever loading operations occur and have occurred without the use of the required control measures.

Dusting and Nuisance to the Public

30.     The failure of Zen-Noh to control the particulate emissions from its loading and unloading operations results in significant dusting.

31.     This dusting from ship and/or barge loading operations at Zen-Noh is posing a nuisance, if not more serious health threats from grain dust, to Consolidated-Nucor employees and contract workers in the area of the future Consolidated-Nucor dock facility. The Occupational Safety & Health Administration provides that grain handling is a "high hazard industry" where workers can be exposed to "numerous serous and life threatening hazards."

These hazards include fires and explosions from grain dust accumulation.[2] Grain dust is the main source of fuel for explosions in grain handling. Grain dust is highly combustible and can burn or explode if enough becomes airborne or accumulates on a surface and finds an ignition source, such as a hot bearing, overheated motor, misaligned conveyor belt, welding, and cutting.[3] Grain dust that gets into the lungs can cause frequent respiratory infections, colds, bronchitis, pneumonia, and long-term exposure can cause asthma, emphysema, chronic bronchitis and other chronic diseases.

32.     Specific incidents of nuisance dusting have occurred on these dates: October 28, 2010, April 16, 2011, June 6, 2011, June 25, 2011, August 11, 2011, and November 16, 2011.

33.     Specific Condition No. 3 of the Air Permit requires that the permittee conduct loading and unloading operations such that they do not cause a nuisance to the public.

34.     This permit condition was adopted pursuant to Louisiana SIP provisions La. Admin. Code tit. 33, part III, §§ 905.A., 1305, and 1311.

35.     Consolidated-Nucor will commence construction in the area immediately adjacent to the Zen-Noh dock soon and has been conducting surveying and other site work in the area. Dusting is worse in this area due to close proximity to the Zen-Noh dock.

36.     Dusting is often so bad that visibility is significantly impaired.

Opacity Standards

37.     Representative samples of Method 9 opacity readings of ship and barge loading operations at Zen-Noh have been conducted by a third party consultant.  Method 9 is the official

---

[2] *See* United States Department of Labor, Occupational Safety & Health Administration, *Grain Handling*, http://www.osha.gov/SLTC/grainhandling/index.html (last visited June 27, 2012).
[3] *Id.*

method for determining compliance with the Louisiana SIP standards for opacity.  See LAC 33:III.1311.

38.    The results of this surveillance confirm that significant violations of the 20% opacity standards of 40 C.F.R. Part 60, Subpart DD, specifically 40 C.F.R. 60.302(c)(4) and La. Admin. Code tit. 33, part III §1311.C have occurred frequently.  Each of these standards is an applicable requirement of the Air Permit.  These violations have occurred numerous times over the past year and are continuing to occur on a regular and frequent basis.

39.    Specific Condition 4 of the Air Permit requires Zen-Noh to comply with the 40 C.F.R. Part 60, Subpart DD standards of performance for grain elevators, including 40 CFR § 60.302(c)(4).  In addition, 40 C.F.R. Part 60, Subpart DD has been incorporated by reference into the Louisiana SIP via La. Admin. Code tit. 33, part III, §3003.

40.    Specific Condition 12 of the Air Permit requires Zen-Noh to comply with La. Admin. Code tit. 33, Chapter 13, Subpart A standards for particulate emissions, including La. Admin. Code tit. 33, part III, §§ 1305 and 1311.C.

Facts Provided in the Air Permit Application

41.    It is believed that Zen-Noh overestimated the particulate control efficiency of several of its loading and unloading operations in its permit application upon which the current Air Permit is based and thus, underestimated both its potential and actual emissions.

42.    It is believed that Zen-Noh also failed to adequately characterize Volatile Organic Compound ("VOC") and particulate matter emissions from its wood chip handling, storage, reclamation and transportation operations as well.  Zen-Noh initially added a 9.5 acre storage slab for the storage and reclamation wood chips in 1995.  The capacity of the storage pile was

then 160,000 tons.  In 2000, Zen-Noh expanded the storage slab to 15 acres and the capacity to 240,000 tons.  Zen-Noh indicated in its application that the emissions from wood chips were minimal.  The storage slab is not a permitted point source or fugitive emission source in the current permit.  However, most pulp and paper mills in the State of Louisiana and most wood yards storing similar materials include relatively significant VOC emissions estimates in their permits.  Several pulp/paper mills have permit limits of over 100 tpy VOC for their wood chip storage piles and PM10 emissions ranging from 1-5 tpy.

43.     The failure to provide relevant facts in the permit application and the submittal of incorrect information in the permit application is a violation of La. Admin. Code tit. 33, III, § 517.C, a provision of the approved part 70 permitting program and a violation of the current minor source permit, General Condition I, issued under the Louisiana SIP.

44.     The failure to supplement or correct incorrect information in a permit application in a timely manner is thus a violation of La. Admin. Code tit. 33, part III, § 517.C., the permit, the LEQA, and the CAA.

45.     Upon information and belief, Zen-Noh either failed to provide correct information in the permit application or failed to promptly supplement or correct such information after the permit was issued.

PM$_{10}$ Emission Limits

46.     To the extent that inaccurate emission factors were used in developing the permit, the actual emissions are likely to have exceeded the permitted emissions, especially with regard to maximum lb/hr. limits from the ship loading operations and barge unloading operations during topping off.  Upon information and belief, Zen-Noh's actual emissions exceed the following

11

permit limits:

| Source Identification | Maximum lb/hr limit PM$_{10}$ | Average lb/hr limit PM$_{10}$ | TPY limit PM$_{10}$ |
|---|---|---|---|
| SHIPLDR1 | 7.10 | 6.4 | 10.84 |
| SHIPLDR2 | 7.10 | 6.4 | 10.84 |
| SHIPLDR3 | 7.10 | 6.4 | 10.84 |
| SHIPLDR4 | 7.10 | 6.4 | 10.84 |
| B-UNLDR | 1.9 | 1.8 | 1.9 |

47.     Any violation of the PM$_{10}$ emission limits of the Air Permit is a violation of General Condition 1 of the Permit, La. Admin. Code tit. 33, §III.501, La. Rev. Stat. Ann. §§ 30:2055 and 2057 (provisions of the LEQA), and Sections 110 and 113 of the Clean Air CAA, 42 U.S.C. §§ 7411 and 7413.

48.     As a source with TSP emissions, inclusive of fugitive emissions, and subject to the NSPS for Grain Elevators in 40 C.F.R. Part 60, Subpart DD, was required to obtain a PSD permit under state and federal rules if its potential to emit TSP was greater than 100 tpy upon initial construction or if it increased TSP emissions by greater than 25 tpy at any time after it had been constructed and modified such that the existing facility potential to emit was greater than 100 tpy TSP. 40 C.F.R. 51.166 and LAC 33:III.509, and prior versions thereof.

49.     When Zen-Noh initially permitted the grain elevator, it indicated that it would have only three ship loading spouts.  However, Zen-Noh actually constructed four ship loading spouts in 1979 or 1980 without obtaining any revision to its 1979 permit.  It was not until the 1995 permit revision that Zen-Noh began to show the 4th spout in its permit.  Even in 1995, Zen-Noh indicated it was only going to emit up to 22 tpy TSP, including the 4th ship loading spout. Upon information and belief, had accurate emission factors been used for the initial permitting

for the facility, and had all four spouts been included, the Elevator would have exceeded a potential to emit of 100 tpy of TSP in 1979 and would have had to obtain a PSD permit prior to construction.

50.     By 2001, Zen-Noh's certified permit modification application indicated it was emitting 153 tpy of TSP.  Permitted changes to the facility between the initial 1979 permit and the 2002 permit were minimal at most. Thus, it is clear that either the initial potential to emit was greater than 100 tpy, or one or more of these projects constituted a change in potential to emit greater than 25 tpy, which would have required prior PSD permitting.

51.     To the extent that the addition of the wood chip storage facility resulted in an increased potential to emit of VOC of 100 tpy or greater, a PSD permit was required for such facility modification prior to construction of the wood chip storage and reclamation equipment.

52.     Zen-Noh does not have a PSD permit for its operations.

## CLAIMS

### COUNT I

53.     Zen-Noh does not have a Part 70 operating permit required pursuant to La. Admin. Code tit. 33, §507.

54.     Each day that Zen-Noh has operated and continues to operate since October 12, 1996 without a Part 70 operating permit is a violation of La. Admin. Code tit. 33, §507, La. Rev. Stat. Ann. §§ 30:2055 and 2057, 40 C.F.R. §70.7, and 42 U.S.C. § 7661a(a).

### COUNT II

55.     Zen-Noh has failed to control particulate emissions from its loading operations through the use of tarpaulins or closed covers in accordance with the terms and conditions of

Louisiana minor source air permit 2560-00005-05.

56.    Accordingly, Zen-Noh has violated, and upon information and belief continues to violate, the specific conditions of its Air Permit, La. Admin. Code tit. 33, §§905, 1305, and 1311.

57.    Any violation of the Air Permit is a violation of La. Rev. Stat. Ann. §§ 30:2055 and 2057 and of the Clean Air CAA, 42 U.S.C. § 7470, *et seq*.

<h3 align="center">COUNT III</h3>

58.    The failure of Zen-Noh to control the particulate emissions from its loading and unloading operations results in significant dusting and is causing a nuisance to the public.

59.    Accordingly, Zen-Noh has violated, and upon information and belief continues to violate, the specific conditions of its Air Permit, La. Admin. Code tit. 33, §§ III.905, 1305, and 1311, including Specific Conditions 2, 3, 5, and 11.

60.    Any violation of the Air Permit is a violation of La. Rev. Stat. Ann. §§ 30:2055 and 2057 and §§ 110 and 113 of the Clean Air CAA, 42 U.S.C. §§ 7411 and 7413.

<h3 align="center">COUNT IV</h3>

61.    Method 9 opacity readings of ship and barge loading operations at Zen-Noh confirm that significant violations of the 20% opacity standards of 40 C.F.R. Part 60, Subpart DD, specifically 40 C.F.R. §60.302(c)(4) and La. Admin. Code tit. 33, §III.1311.C. contained in the Air Permit have occurred and are continuing to occur on a regular and frequent basis during the loading and unloading operations.

62.    Accordingly, Zen-Noh has violated, and upon information and belief continues to violate, the specific conditions of its Air Permit, La. Admin. Code tit. 33, §§ 1305, 1311 and 3003.

14

63. Any violation of the Air Permit is a violation of La. Rev. Stat. Ann. §§ 30:2055 and 2057 and §§ 110 and 113 of the Clean Air CAA, 42 U.S.C. §§ 7411 and 7413.

## COUNT V

64. Zen-Noh either failed to provide correct information in its application for the Air Permit or failed to promptly supplement or correct such information after the permit was issued.

65. Such omission or failure to correct and supplement is a violation of General Condition I of the Air Permit, La. Admin. Code tit. 33, §§517.C., La. Rev. Stat. Ann. §§ 30:2055 and 2057 and §§ 110 and 113 of the Clean Air CAA, 42 U.S.C. §§ 7411 and 7413.

## COUNT VI

66. Upon information and belief, because inaccurate emission factors were used in developing the Air Permit, the actual emissions have exceeded the permitted emissions.

67. Any violation of the $PM_{10}$ emission limits of the Air Permit is a violation of General Condition 1 of the Permit, La. Admin. Code tit. 33, §§501, La. Rev. Stat. Ann. §§30:2055 and 2057 and §§ 110 and 113 of the Clean Air CAA, 42 U.S.C. §§ 7411 and 7413.

## COUNT VII

68. Upon information and belief, Zen-Noh is operating without a required PSD Permit because it should have obtained such a permit before the Elevator was constructed, or should have obtained such a permit before it constructed a major modification to the Elevator.

## PRAYER FOR RELIEF

THEREFORE, Plaintiff, Consolidated Environmental Management, Inc., respectfully requests the Court to enter judgment for Plaintiff and against Zen-Noh, and enter an order:

1. Enjoining Zen-Noh from conducting operations at the Zen-Noh Grain Corporation

Elevator in St. James Parish, at 8886 Highway 44, Convent, Louisiana 70723, until such time as Zen-Noh obtains a Part 70 operating permit pursuant to La. Admin. Code tit. 33, part III, §507.

2.  Enjoining Zen-Noh from conducting operations at its Elevator that violate the terms and conditions of its Air Permit and the Louisiana SIP.

3.  Enjoining Zen-Noh from conducting operations at the Elevator until it obtains a retroactive PSD permit pursuant to La. Admin. Code tit. 33, part III, §509.

4.  Assessing civil penalties against Zen-Noh pursuant to 42 U.S.C. § 7604 and La. Rev. Stat. §§ 30:2025 and 30:2026.A.(2).

5.  Awarding reasonable attorney fees and expert witness fees under 42 U.S.C. § 7604 and the Louisiana Environmental Quality Act.

6.  For all other just and equitable relief for Consolidated-Nucor.

Respectfully submitted,

BRADLEY MURCHISON KELLY & SHEA LLC


By:   __/s/ David R. Taggart_____
        DAVID R. TAGGART, T.A. (#12626)
        JERALD N. JONES (#2005)
401 Edwards Street, Suite 1000
Shreveport, Louisiana 71101
Tel.: 318-227-1131
Fax: 318-227-1141


[Signatures continued on following page.]

       BRADLEY R. BELSOME (#27958)
       MICHAEL C. MIMS (#33991)
1100 Poydras St., Ste. 2700
New Orleans, LA 70163-2700
Tel.: (504) 596-6300
Fax: (504) 596-6301

KEAN MILLER LLP
MAUREEN N. HARBOURT (#01068)
TOKESHA M. COLLINS (#31672)
Post Office Box 3513
Baton Rouge, LA  70821-3513
Telephone: (225) 387-0999
Facsimile: (225) 388-9133

MOORE & VAN ALLEN, PLLC
WILLIAM WHITE (*pro hac vice)*
100 North Tryon Street, Suite 4700
Charlotte, North Carolina 28202
Telephone: (704)331-1098
Facsimile: (704) 378-2098
ATTORNEYS FOR CONSOLIDATED
ENVIRONMENTAL MANAGEMENT, INC.